STATE OF NEBRASKA, APPELLEE, V. ARTHUR LYLE, APPELLANT.

603 N.W.2d 24

Filed December 3, 1999.   No. S-99-011.

Arthur Lyle, pro se, on brief.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MILLER-LERMAN, JJ.

HENDRY, C.J.

## INTRODUCTION
Arthur Lyle brought a motion for postconviction relief in the district court for Douglas County. The court denied Lyle an evidentiary hearing, denied his request for counsel, and concluded that Lyle was not entitled to any postconviction relief. Lyle appeals from the district court's decision. We affirm.

## BACKGROUND
After a bench trial, Lyle was convicted of first degree murder in the shooting death of his brother, John Gould. He was sentenced to life in prison. Lyle's conviction and sentence were affirmed on direct appeal in *State v. Lyle*, 245 Neb. 354, 513 N.W.2d 293 (1994), in which the facts surrounding Gould's death are set out in greater detail. In summary, Gould and Lyle became involved in an argument which escalated into a physical fight. This fight occurred at the Florence Heights Nursing Home in Omaha, Nebraska, where their mother lived. The fight ended

when Gould pushed Lyle off a porch and onto the grass below. A nurse's aide who witnessed part of the fight gave Lyle back his eyeglasses, and Lyle told the aide, "I'll be back."

Lyle left the nursing home and dropped off his two grand-children, who were with him, at a convenience store. He returned to the nursing home approximately 20 minutes after the fight. Gould's wife testified at trial that she saw Lyle drive at a high rate of speed across the lawn to the front porch of the nursing home. Lyle then grabbed a gun he kept in his truck; got out, saying "Here, you mother fucker"; and immediately began firing. Lyle shot Gould five times, moving the gun up and down Gould's body as he fired. He also shot and injured Gould's wife.

Lyle brings this motion for postconviction relief regarding his conviction and sentence for Gould's murder, asserting that his constitutional rights were violated. In particular, Lyle asserts in his motion that he "was denied Due Process" because Lyle had the burden at trial to prove beyond a reasonable doubt that he acted in the heat of passion when he shot his brother. He also asserts trial counsel "failed to provide the defendant with effective assistance of counsel" and his direct appeal counsel "failed to provide the defendant with effective assistance of counsel."

In support of these assertions, Lyle pleads in his postconviction motion that trial counsel advised Lyle that he had to testify at trial because Lyle had to "prove that he had acted in the heat of passion when he shot his brother." Lyle also claims that trial counsel did no investigation of other eyewitnesses to the fight and the shooting who could "confirm [Lyle's] version of what had occurred during the altercation." Lyle alleges he asked trial counsel to summon these people to the trial so that Lyle would not have to testify, but none of the witnesses were summoned. Finally, Lyle asserts that direct appeal counsel failed to raise any of the issues related to the actions or inactions of trial counsel on appeal.

In appealing the decision of the district court, Lyle argues that the allegations contained in his motion for postconviction relief show that he is entitled to an evidentiary hearing, appointed counsel, and postconviction relief.

## ASSIGNMENTS OF ERROR

Lyle contends, rephrased and summarized, that the district court erred in (1) finding no violation of due process during Lyle's trial, (2) finding no ineffective assistance of trial counsel, (3) finding no ineffective assistance of appellate counsel, (4) denying Lyle an evidentiary hearing, (5) denying Lyle appointed counsel, and (6) finding that Lyle was entitled to no relief.

## STANDARD OF REVIEW

A defendant requesting postconviction relief must establish the basis for such relief, and the findings of the district court will not be disturbed unless they are clearly erroneous. *State v. Ryan*, 257 Neb. 635, 601 N.W.2d 473 (1999).

## ANALYSIS

Lyle claims that his due process rights were violated during trial in that the burden of proof somehow shifted to Lyle to prove he acted in the heat of passion when he shot Gould. This issue, standing alone, is procedurally barred. Lyle failed to raise this issue in his direct appeal, when this issue was known to Lyle and could have been addressed using the record available on direct appeal. A motion for postconviction relief cannot be used to secure review of issues which were known to the defendant and could have been litigated on direct appeal. *State v. Palmer*, 257 Neb. 702, 600 N.W.2d 756 (1999); *State v. Ryan, supra.*

Lyle also claims that he was deprived of effective assistance of counsel at trial. The ineffectiveness of trial counsel could also have been raised on direct appeal, since Lyle was represented by different counsel at trial and on appeal. Thus, issues related to the ineffectiveness of trial counsel, except as reached through Lyle's claim of ineffective assistance of direct appeal counsel as discussed below, are procedurally barred. *State v. Bennett*, 256 Neb. 747, 591 N.W.2d 779 (1999).

Lyle also asserts that he was deprived of effective assistance of counsel on direct appeal. Lyle's claim regarding the ineffective assistance of direct appeal counsel is not procedurally barred. See *State v. Moore*, 256 Neb. 553, 591 N.W.2d 86 (1999). This is the first opportunity Lyle has had to present his

claim regarding the alleged ineffectiveness of direct appeal counsel in failing to recognize and raise any claimed errors which occurred at the trial court level.

We proceed to review only Lyle's assertion of ineffective assistance of direct appeal counsel to determine whether the district court was clearly erroneous in holding that Lyle was not entitled to an evidentiary hearing, denying Lyle appointed counsel, and concluding that Lyle was entitled to no relief.

■ An evidentiary hearing on a motion for postconviction relief is required on an appropriate motion containing factual allegations which, if proven, constitute an infringement of the movant's rights under the state or federal Constitution. *State v. Smith*, 256 Neb. 705, 592 N.W.2d 143 (1999); *State v. Silvers*, 255 Neb. 702, 587 N.W.2d 325 (1998). An evidentiary hearing is not required when the motion alleges only conclusions of fact or law. *Id.* Further, when the motion properly alleges an infringement of the defendant's constitutional rights, an evidentiary hearing should still be denied when the records and files affirmatively show that the defendant is entitled to no relief. *Id.*

■ Under the test enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), in order to sustain a claim of ineffective assistance of counsel as a violation of the Sixth Amendment to the U.S. Constitution and Neb. Const. art. I, § 11, a defendant must show that (1) counsel's performance was deficient and (2) such deficient performance prejudiced the defendant, that is, demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *State v. Ryan*, 257 Neb. 635, 601 N.W.2d 473 (1999).

Lyle's postconviction motion alleges four different prejudicial actions by trial counsel which Lyle asserts appellate counsel should have raised on direct appeal. First, trial counsel advised Lyle that Lyle had the burden to prove he acted in the heat of passion when he killed his brother. Second, trial counsel advised Lyle that he must testify. Third, trial counsel failed to investigate other witnesses Lyle identified. Fourth, trial counsel failed to address the issue of who had the burden to prove or disprove malice on a charge of first degree murder which, because

of the state of the law in Nebraska, impermissibly shifted the burden to Lyle to disprove malice.

Lyle asserts that he was prejudiced by trial counsel's actions in that he elected to testify and his testimony was confusing and contradictory. He was also allegedly prejudiced because he was denied the opportunity to call witnesses who would support his testimony or testify in his place. Finally, he was allegedly prejudiced in that he had the burden of proving he acted in the heat of passion when he shot his brother.

Accepting the allegations of Lyle's motion as true, we conclude that Lyle's motion pleads facts which, if proven, could indicate that appellate counsel was ineffective in failing to raise the improper actions of trial counsel. Accordingly, we turn to the files and records to determine whether they affirmatively show that Lyle is entitled to no relief. See *State v. Silvers, supra.*

In so doing, we consider whether the records and files affirmatively show that Lyle was not prejudiced by the actions of direct appeal counsel. The two prongs of the *Strickland* test, deficient performance and prejudice, may be addressed in either order. See *State v. Ryan, supra.* If it is more appropriate to dispose of an ineffectiveness claim due to the lack of sufficient prejudice, that course should be followed. *Id.* Accordingly, in order for Lyle to be denied an evidentiary hearing, the records and files must affirmatively show no reasonable probability that but for appellate counsel's failure to raise the deficient performance of trial counsel, the result of the proceeding would have been different. See *id.*

We first consider whether Lyle was prejudiced by electing to testify. In order to be guilty of first degree murder, the State must prove beyond a reasonable doubt that the defendant intentionally killed the victim with deliberate and premeditated malice. *State v. McBride*, 250 Neb. 636, 550 N.W.2d 659 (1996). As a part of the State's case in chief, Gould's wife testified that the fight between Lyle and Gould was relatively short and consisted of mostly pushing and shoving. Lyle left, then came back 20 or 30 minutes later, driving at a high rate of speed. Lyle stopped his truck, got out, shouted at Gould, and began shooting. He shot and killed Gould, shot and injured Gould's wife, then got back into the truck and left.

Lyle admitted in his direct testimony that he shot Gould and Gould's wife with a gun he kept in his truck. He further testified that he had helped raise Gould, who was 15 years younger than Lyle. Gould lived with Lyle from the time Gould was 10 years old until he was about 15 years old. Lyle generally looked after Gould and had at one time given him a car and a motorcycle. Lyle also testified that at the time of the shooting, "I was real angry. I just couldn't think; I couldn't see straight. I was angry. I was mad."

Given the records and files in this case, it cannot be shown that there was a reasonable probability that but for Lyle's testifying, the outcome of the proceeding would have been different. The record shows that even before Lyle testified, the State had presented sufficient evidence to convict Lyle of first degree murder. If anything, Lyle's testimony was helpful to his defense in that Lyle was able to testify that he was provoked due to the sudden quarrel with Gould.

If the claim of provocation is successful, the killing is reduced from first degree murder to manslaughter because the defendant acted not with malice, but instead acted while provoked. *State v. Lyle*, 245 Neb. 354, 513 N.W.2d 293 (1994). Being able to provide evidence of provocation was far from prejudicial to Lyle. The records and files affirmatively show that Lyle was not prejudiced by his testimony.

Lyle's second allegation of prejudice is that his testimony was confusing and inconsistent with the testimony of the State's witnesses. This claim also fails because, as discussed above, Lyle's testimony was largely exculpatory, or alternatively, it was cumulative of evidence already adduced by the State. See *State v. Owens*, 257 Neb. 832, 601 N.W.2d 231 (1999).

Lyle's third allegation of prejudice is that he was deprived of witnesses who would have either obviated the need for Lyle to testify or confirmed Lyle's version of the events. In particular, Lyle asserts that these witnesses would have confirmed Lyle's testimony that Gould was the aggressor throughout the fight and that Lyle was gone for 10 minutes, rather than 20 or 30.

The fact that Lyle allegedly was deprived of witnesses who would have confirmed his version of the events fails to show prejudice. The evidence that Gould was the aggressor during the

fight and that Lyle was gone for only 10 minutes was already before the judge in the form of Lyle's testimony. Additional testimony as to those two facts would have been merely cumulative. Lyle seems to assume that the court did not believe his testimony, which is why he was found guilty of first degree murder. However, even if the court believed Lyle's version of events, this does not preclude a finding that Lyle was guilty of premeditated, deliberate murder. Upon proper proof, premeditation can be formed in an instant or in 10 minutes as easily as in 20 to 30 minutes. See, *State v. Hansen*, 252 Neb. 489, 562 N.W.2d 840 (1997); *State v. Marks*, 248 Neb. 592, 537 N.W.2d 339 (1995). Further, we have already concluded that Lyle was not prejudiced by choosing to testify.

The records and files affirmatively show that Lyle was not prejudiced by the lack of testimony from the missing witnesses.

■ Lyle's final assertion of prejudice is that he bore the burden at trial to prove that he acted in the heat of passion, that is, without malice, due to trial counsel's ineffective performance. In particular, in his motion for postconviction relief, Lyle asserts, "[T]he trial record shows that under the laws of this state the burden of proving the absence of malice was imposed upon [Lyle]." Because Lyle waived his right to a jury trial, there are no jury instructions in the record setting out the burden of proof on the issue of malice with regard to first degree murder. Therefore, we must look to the state of the law at the time of Lyle's trial. This is the proper inquiry because a trial judge is presumed in a jury-waived criminal trial to be familiar with and apply the proper rules of law, unless it clearly appears otherwise. *State v. Russell*, 248 Neb. 723, 539 N.W.2d 8 (1995); *State v. Lyle*, 245 Neb. 354, 513 N.W.2d 293 (1994).

■ The elements of first degree murder in Nebraska are intent to kill, premeditated malice, and deliberate malice. *State v. McBride*, 250 Neb. 636, 550 N.W.2d 659 (1996); *State v. Buckman*, 237 Neb. 936, 468 N.W.2d 589 (1991). The State bears the burden of proving all of these elements beyond a reasonable doubt. *State v. McHenry*, 247 Neb. 167, 525 N.W.2d 620 (1995). See, also, *Mullaney v. Wilbur*, 421 U.S. 684, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975).

Lyle asserts that Nebraska's law was unclear as to how the trier of fact was to assess evidence provided by the defendant that would tend to negate malice, which in Lyle's case is evidence of provocation caused by a sudden quarrel. Trial counsel's failure to address this lack of clarity, according to Lyle, required Lyle to prove provocation beyond a reasonable doubt, that is, in order to negate malice, Lyle was required to prove the absence of malice.

As support for his contention, Lyle directs us to *State v. Cave*, 240 Neb. 783, 484 N.W.2d 458 (1992). Cave was charged with first degree murder and found guilty of second degree murder. There was testimony at trial that Cave was quarreling with the victim at the time of the murder. In his direct appeal, Cave argued that the evidence adduced would support only a finding of manslaughter, the killing of another upon a sudden quarrel without malice. See Neb. Rev. Stat. § 28-305 (Reissue 1995). In assessing the sufficiency of the evidence, we reiterated that the State was required to prove all of the elements of second degree murder beyond a reasonable doubt in order to convict the defendant. We further stated,

> it is by no means clear that in a prosecution for second degree murder, the burden is on the State to prove the absence of a sudden quarrel beyond a reasonable doubt. We do not decide the question, however, because even assuming the State carried such a burden, the evidence is sufficient to sustain the convictions in this case.

*State v. Cave*, 240 Neb. at 790, 484 N.W.2d at 464.

In *Cave*, we declined to reach the issue of whether the State was required to prove the absence of a sudden quarrel as an element of second degree murder. However, the elements of second degree murder are not at issue in Lyle's postconviction motion. Lyle's allegations concern who has the burden of proof, and in *Cave*, we reiterated that the State has the burden to prove all the elements of a murder charge beyond a reasonable doubt. *State v. Cave, supra*. When there is evidence of provocation in a case involving first degree murder, the burden remains on the State to show beyond a reasonable doubt all of the elements of first degree murder. See *State v. McHenry, supra*. It is a question for the trier of fact whether the defendant in a particular case has

presented sufficient evidence of provocation to cast a reasonable doubt on the element of malice. See *State v. Lyle*, 245 Neb. 354, 513 N.W.2d 293 (1994).

As we held in Lyle's direct appeal, the State proved all the elements of first degree murder beyond a reasonable doubt against Lyle. The State's proof was sufficient to allow the trial court to find that Lyle's evidence regarding provocation was rebutted by the State's evidence beyond a reasonable doubt. *State v. Lyle, supra.*

The records and files affirmatively show that Lyle did not have the burden of proving the absence of malice at trial. Thus, Lyle was not prejudiced by appellate counsels' alleged failure to raise this issue, or any of the other issues, alleged by Lyle.

The district court was not clearly erroneous in finding that the records and files affirmatively show that Lyle is not entitled to any relief. Thus, Lyle was not entitled to an evidentiary hearing. Further, the district court did not abuse its discretion in refusing to appoint counsel for Lyle in that his postconviction motion does not present any justiciable issues. See *State v. Boppre*, 252 Neb. 935, 567 N.W.2d 149 (1997).

## CONCLUSION

After examining all of Lyle's assigned errors, we conclude they are without merit and affirm the decision of the district court in all respects.

AFFIRMED.

MCCORMACK, J., participating on briefs.